EXHIBIT A

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(2/28/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, <u>CHANCERY</u> DIVISION

No. <u>2014 CH09529</u>

WILLIAM CODY, individually and on behalf of all others similarly situated,

(Name all parties)

v.

THE NIELSEN COMPANY (US), LLC, a Delaware limited liability company, NIELSEN AUDIO, INC., a Delaware corporation, and SCARBOROUGH RESEARCH, a Delaware general partnership

2014CH09529
CALENDAR/ROOM 05
TIME 00:00
Class Action

## ◉ SUMMONS ○ ALIAS SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

⬛ Richard J. Daley Center, 50 W. Washington, Room <u>802</u>, Chicago, Illinois 60602

| | | |
|---|---|---|
| ○ District 2 - Skokie<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ○ District 3 - Rolling Meadows<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ○ District 4 - Maywood<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
| ○ District 5 - Bridgeview<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ○ District 6 - Markham<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60428 | ○ Child Support<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: <u>44146</u>

Name: <u>Edelson PC</u>

Atty. for: <u>Plaintiff William Cody</u>

Address: <u>350 North LaSalle Street, Suite 1300</u>

City/State/Zip: <u>Chicago, Illinois 60654</u>

Telephone: <u>312.589.6370</u>

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____

_____
Clerk of Court

Date of service: <u>6/11/14</u>, _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED-CH

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| WILLIAM CODY, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | 2014CH09539 CALENDAR/ROOM 07 TIME 00:00 Class Action |
| v. | |
| THE NIELSEN COMPANY (US), LLC, a Delaware limited liability company, NIELSEN AUDIO, INC., a Delaware corporation, and SCARBOROUGH RESEARCH, a Delaware general partnership, | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff William Cody ("Cody") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants The Nielsen Company (US), LLC, Nielsen Audio, Inc., and Scarborough Research to stop their practice of making unsolicited calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.      Defendants, acting jointly through the brand name Scarborough Research, conduct telephone surveys by making calls to thousands of consumers nationwide. By their own admission, they do not have consent, written or otherwise, to place these telephone calls.

2.      Defendants "survey[] more than 210,000 people across the country to capture local consumer trends" and through the use of an "array of data, insight and analytic services,

[they] help [their] customers tackle marketing and media challenges."[1]

3.     Unfortunately for consumers, in an attempt to collect survey data, Defendants repeatedly made unsolicited telephone calls to the cellular telephones of Plaintiff and the other members of the putative Class without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.     By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance, as well as the invasion of privacy, that necessarily accompanies the receipt of unsolicited and harassing telephone calls and the monies paid to their wireless carriers for the receipt of such telephone calls.

5.     The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6.     Plaintiff William Cody is a natural person and citizen of the State of Florida.

7.     Defendant The Nielsen Company (US), LLC is a limited liability company existing under the laws of the State of Delaware with a principal place of business located at 150 North Martingale Road, Schaumburg, Illinois 60173. Defendant The Nielsen Company (US), LLC is registered with the Illinois Secretary of State as entity number 02624745. Defendant The Nielsen Company (US), LLC regularly conducts business throughout this County, the State of

---

[1]     *Scarborough Research: About Us*, http://www.scarborough.com/about/what-we-do (last visited June 2, 2014).

Illinois, and the United States.

8.      Defendant Nielsen Audio, Inc. (f/k/a Arbitron, Inc.) is a corporation existing under the laws of the State of Delaware with its principal place of business located at 9705 Patuxent Woods Drive Columbia, Maryland 21046. Defendant Nielsen Audio, Inc. is registered with the Illinois Secretary of State as entity number 21167452. Defendant Nielsen Audio, Inc. regularly conducts business throughout this County, the State of Illinois, and the United States.

9.      Defendant Scarborough Research is a general partnership existing under the laws of the State of Delaware with its principal place of business located at 770 Broadway, New York, New York 10003. Scarborough Research is a joint venture operated by Defendants The Nielsen Company (US), LLC and Nielsen Audio, Inc.. Defendant Scarborough Research regularly conducts business throughout this County, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

10.      The Court has personal jurisdiction over this action pursuant to 735 ILCS 5/2-209 because Defendant The Nielsen Company (US), LLC resides here and all three Defendants do business in Illinois and have committed tortious acts within Illinois.

11.      Venue is proper because Defendant The Nielsen Company (US), LLC resides here, and all three Defendants do business in Cook County, and the cause of action arose, in substantial part, in Cook County.

## COMMON FACTUAL ALLEGATIONS

12.      Defendants are part of a conglomeration of companies surrounding the Nielsen brand name. Nielsen, most famous for tracking television-viewing habits, is largely in the business of consumer data collection and sale.

13.      One such method of data collection is through the use of widespread survey

3

campaigns conducted over the telephone.[2] These surveys cover a broad range of topics from local issues, national questions, retail preferences, and more.

     14.    Unfortunately, in making these calls to consumers across the nation, Defendants fail to get the consent of cellular telephone users to make such calls in the first place.

     15.    Instead, by Defendants own admission, they "randomly select respondents" to take their surveys and will "randomly select listed phone numbers from your local area and supplement them with random dialing of other (unlisted) phone numbers from your local area."[3]

     16.    As such, Defendants admittedly have no consent (oral, written, or otherwise) to make the survey calls to cellular telephone numbers.

     17.    While this "random dialing" method of collecting survey responses may be within the letter of the law for calls placed to landline (wireline) telephones, the same calls to cellular (wireless) telephones are expressly not permitted without prior consent. As noted by the Federal Communications Commission ("FCC") in its 2012 Order:

> Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications, *research or survey calls*, and wireless usage notifications. Again, such calls, to the extent that they do not contain telemarketing messages, would not require any consent when made to residential wireline consumers, but *require either written or oral consent if made to wireless consumers* and other specified recipients.[4]

---

[2]    *See Scarborough Research: Methodology*, http://en-us.nielsen.com/sitelets/cls/documents/scarborough/Scarborough-Methodology-2012.pdf ("All survey phone calls are conducted in-house by Scarborough telephone centers in Sarasota, FL and San Antonio, TX") (last visited June 2, 2014).

[3]    *Scarborough Research: Survey FAQs*, http://www.scarborough.com/surveys/survey-faqs (last visited June 2, 2014).

[4]    *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 12-21, CG Dkt. 02-278 (emphasis added).

18.    In making the calls at issue in this Complaint, Defendants utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendants has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

19.    In fact, Defendants admit on their own website that they use "robocallers, autodialers or pre-recorded messages" to contact consumers.[5]

20.    Defendants intentionally call cellular telephone users as part of their strategy. "Scarborough uses Cell Phone-Only (CPO) samples in all 77 syndicated local markets, as well as, the USA+ Study. Incorporating a Cell Phone-Only respondent base ensures that clients have insights that are truly representative of today's consumers in order to strategically plan their initiatives"[6] and "[t]hese surveys include the best *random-digit dial* (landline and/or cell phone) samples or online samples to reach deeply into the population."[7]

21.    Consumer complaints about Defendants' invasive and repetitive calls are legion. For example, a single online complaint board has thirteen pages of complaints (approximately 350 complaints) from consumers receiving unwanted and repeated calls from Defendants.

---

[5]    *Scarborough Research: Survey FAQs.* http://www.scarborough.com/surveys/survey-faqs.

[6]    *Scarborough Research: Methodology,* http://en-us.nielsen.com/sitelets/cls/documents/scarborough/Scarborough-Methodology-2012.pdf.

[7]    *Scarborough Research: Analytics.* http://www.scarborough.com/analytics/custom-analytics/custom-capabilities (last visited June 2, 2014) (emphasis added).

including the following:

- "The phone rings at 9:30p[m]. Waking everyone up (we are an early to rise family). I only answered to stop the ringing. When I said hello I get I am from ... Company. I asked if they knew what time it was. Reply is to give a different time to call. The caller turned rude when I demanded to be taken of their call list. Caller: Scarborough Research;"

- "What shocks me the most about this phone # is the fact I am writing this on 1/24/2014 and there have been complaints about their harassing calls for over 5 years. I just recently started to get called by this # over the past 2 weeks. 1 was around 4pm and 2 were at 10pm. Last night I picked up the phone to see who the hell is calling my house at this hour. There was a man on the other line and I said to him 'Do you realize what time it is?'. He said 'Yes, I am just calling to do a survey'. I told him, I am very ill and cannot be receiving such stupid calls at this hour, followed by, DON'T EVER CALL HERE AGAIN!!!. We will see if this stops;" and

- " ... When I asked him to place my number on their Do Not Call list, he said they didn't have one. Yeah, right. I don't care what kind of company it is, if someone asks you to remove their name from the list, you do it. From what he told me, they use a random dialer. I said if that was the case and they cannot remove my number from the list, then put an alert on my number to prevent the dialer from 'randomly' calling my house at all hours of the day and night."[9]

22.     As such, Defendants were fully aware they were making telephone calls without consent and in the face of hundreds of consumer complaints.

## FACTS SPECIFIC TO PLAINTIFF CODY

23.     Starting in or around April 2014, Plaintiff Cody began receiving calls to his cellular telephone from the phone number (941) 379-1954.

24.     Initially, Plaintiff did not answer these calls. However, after the calls persisted, Plaintiff finally answered the calls to determine the source of the calls. When Plaintiff picked up the phone there was a noticeable pause before he was connected to a live operator.

25.     When the operator finally did come on, he or she would identify him or herself as

---

[9]     *See 800 Notes: Directory of Known Callers*, http://800notes.com/Phone.aspx/1-941-379-1954 (last visited June 2, 2014).

6

calling from Scarborough Research and indicated that they were calling to conduct a survey.

26.     Plaintiff requested on multiple occasions that Defendants stop calling him and that his number be removed from their call list. Yet, even after these requests, Defendants continued to call. The calls occurred as often as once per day.

27.     Defendants are and were aware that the above-described telephone calls were and are being made to the cellular telephones of consumers like Plaintiff who had not consented to receive them.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and a class defined as follows (the "Class"):

> All individuals in the United States (1) who received a telephone call; (2) on his or her cellular telephone; (3) for participation in a Scarborough Research survey; and (4) for whom Defendants have no current record of oral or written consent to place such calls to him or her.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person, and (5) Plaintiff's counsel and Defendants' counsel.

29.     **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

7

30. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

      (a)     Whether Defendants' conduct constitutes a violation of the TCPA;

      (b)     Whether Defendants systematically made telephone calls to members of the Class who Defendants did not have a current record of consent to make such telephone calls; and

      (c)     Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

31. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

32. **Appropriateness:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Additionally, the

damages suffered by individual members of the Class will likely be small relative to the burden

and expense of individual prosecution of the complex litigation necessitated by Defendants'

actions. Thus, it would be virtually impossible for the members of the Class to obtain effective

relief from Defendants' misconduct on an individual basis. A class action provides the benefits

of single adjudication, economies of scale, and comprehensive supervision by a single court.

Economies of time, effort, and expense will be fostered and uniformity of decisions will be

ensured.

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

33.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

34.     Defendants made unsolicited telephone calls to cellular telephone numbers

belonging to Plaintiff and other members of the Class without any form of prior express consent

to receive such calls.

35.     Defendants also made unsolicited telephone calls to cellular telephone numbers

belonging to Plaintiff and other members of the Class after they expressly requested to no longer

receive telephone calls from Defendants.

36.     Defendants made the telephone calls using equipment that had the capacity to

store or produce telephone numbers to be called using a random or sequential number generator,

and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without

human intervention.

37.     Defendants utilized equipment that made, or had made on their behalf, the

telephone calls to Plaintiff and other members of the Class simultaneously and without human

intervention. The telephone dialing equipment utilized by Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

38.     By making the unsolicited telephone calls to Plaintiff and the Class members' cellular telephones without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

39.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and under 47 U.S.C. § 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

40.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff William Cody, individually and on behalf of the Class, prays for the following relief:

1.     An order certifying the Class as defined above, appointing Plaintiff William Cody as the representative of the Class, and appointing his counsel as Class Counsel;

2.     An award of actual and statutory damages;

3.     An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class;

4.     An award of reasonable attorneys' fees and costs; and

5.     Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**WILLIAM CODY**, individually and on behalf of Class of similarly situated individuals,

Dated: June 6, 2014

By: _____
    One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Christopher L. Dore
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm I.D.: 44146

Stefan L. Coleman, Esq.
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
210 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427

FILED-CH

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| WILLIAM CODY, individually and on behalf of all others similarly situated, | Case No.: |
|---|---|
| *Plaintiff,* | |
| *v.* | |
| THE NIELSEN COMPANY (US), LLC a Delaware limited liability company, NIELSEN AUDIO, INC., a Delaware corporation, and SCARBOROUGH RESEARCH, a Delaware general partnership, | |
| *Defendants.* | |

## PLAINTIFF'S MOTION FOR AND MEMORANDUM
## IN SUPPORT OF CLASS CERTIFICATION

Plaintiff William Cody ("Cody"), by and through his undersigned counsel, hereby

respectfully moves the Court for an Order certifying this case as a class action pursuant to

Section 2-801 of the Illinois Code of Civil Procedure ("Section 2-801"), but requests that the

Court enter and continue the instant motion until after the completion of discovery on class wide

issues, at which time Plaintiff will submit a fulsome memorandum of points and authorities in

support of class certification.[1]

## I.      INTRODUCTION.

This matter presents a textbook case for class certification. In an effort to collect survey

data, Defendants The Nielsen Company (US), LLC, Nielsen Audio, Inc., and Scarborough

---

[1]      Plaintiff filed this motion at the outset of the litigation to prevent Defendants from
attempting a so-called "buy off" to moot his representative claims (*i.e.*, tendering to him the full
amount of his individual damages alleged in his Class Action Complaint and Demand for Jury
Trial ("Complaint")). *See Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450, 459 (2011); *see also
Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). Under Illinois law, "a named
plaintiff who files a motion for class certification *prior* to a defendant's tender may avoid a
mootness determination, at least until after the circuit court rules on the motion for class
certification." *Barber*, 662 F.3d at 459 n.1.

1

Research made unsolicited telephone calls to the cellular telephones of Plaintiff and potentially thousands of others without their consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The telephone calls were originated by Defendants in the exact same manner—through the use automated telephone dialing equipment—and without the prior express consent of Plaintiff or other members of the putative Class, and none of whom provided Defendants with their telephone numbers. Likewise, the injuries suffered by Plaintiff and the putative Class as a result of Defendants' conduct are identical. That is, each member of the putative Class was subjected to the aggravation and nuisance that necessarily accompanies the receipt of unsolicited telephone calls and were required to pay monies to their wireless carriers for the receipt of such telephone calls, thus entitling them to a nearly identical calculation of actual and statutory damages under the TCPA.

For these reasons and as discussed further herein, the proposed Class readily satisfies each of the prerequisites under Section 2-801. As such, the instant motion should be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion for and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a supplemental memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and, (5) provide all other and further relief that the Court deems reasonable and just.

## II. FACTUAL BACKGROUND.

### A. Facts Applicable to All Members of the Putative Class.

Plaintiff filed his Complaint in this Court on June 6, 2014, alleging claims on behalf of

himself and a nationwide class of individuals seeking relief from Defendants' violations of the TCPA. According to the Complaint, in an attempt to collect survey data, Defendants made unsolicited telephone calls to Plaintiff's and the other putative Class member's cellular telephones. (Compl. ¶¶ 12–27.) Defendants did not, however, obtain prior express consent from the Plaintiff or the other putative Class members to call their cellular telephones. (*Id.* ¶¶ 22, 27.) Defendants dialed the calls to Plaintiff and the other members of the Class using equipment that had the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. (*Id.* ¶¶ 18–19.)

**B.     Facts Specific to Plaintiff William Cody.**

Plaintiff Cody is just one of potentially thousands of consumers nationwide who received an unsolicited telephone call from Defendants. (*Id.* ¶ 23.) Starting in or around April 2014, Plaintiff Cody began receiving calls to his cellular telephone from the phone number (941) 379-1954. (*Id.*) After ignoring the first several telephone calls, Plaintiff finally answered. (*Id.* ¶ 24.) After a noticeable pause, an operator identified him or herself as calling from Scarborough Research and indicated that he or she was calling to conduct a survey. (*Id.* ¶ 25.) At no time did Plaintiff Cody ever consent to the receipt of such telephone calls from Defendants and in fact, had on several occasions, requested to be removed from their call list. (*Id.* ¶¶ 26–27.)

**C.     The Proposed Class.**

As a result of Defendants' conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of a nationwide class of individuals (the "Class"), defined as follows:

> All individuals in the United States (1) who received a telephone call; (2) on his or her cellular telephone; (3) for participation in a Scarborough Research survey; and (4) for whom Defendants have no current record of oral or written consent to place such calls to him or her.

3

(*Id.* ¶ 28.) As demonstrated below, the proposed Class meets each of Section 2-801's

prerequisites to certification and therefore, the instant motion should be granted in its entirety.

## III. THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Certifying a class in Illinois requires the plaintiff to establish that: "(1) [t]he class is so

numerous that joinder of all members is impracticable[;] (2) [t]here are questions of fact or law

common to the class, which common questions predominate over any questions affecting only

individual members[;] (3) [t]he representative parties will fairly and adequately protect the

interest of the class[; and] (4) [t]he class action is an appropriate method for the fair and efficient

adjudication of the controversy." 735 ILCS 5/2-801.

In determining whether to certify a proposed class, the Court need not decide whether the

plaintiff will ultimately prevail on the merits. *See Chultem v. Ticor Title Ins. Co.*, 401 Ill. App.

3d 226, 237 (1st Dist. 2010) (citing *Cruz v. Unilock Chicago*, 892 N.E.2d 78, 91–92 (Ill. App. 2d

Dist. 2008)) (finding that an issue that goes to the merits of the underlying actions "is not

appropriate to be considered when examining the propriety of class certification"). Rather, the

Court should accept as true the allegations in the complaint, *Ramirez v. Midway Moving &*

*Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007) (quoting *Clark v. TAP Pharm. Prods., Inc.*,

343 Ill. App. 3d 538, 544–45 (5th Dist. 2003)), and "should err in favor of maintaining class

[certifications]." *Id.* (quoting *Clark*, 343 Ill App. 3d at 545). Though the plaintiff bears the

burden of establishing all four of the prerequisites for maintenance of a class action under 735

ILCS 5/2-801, *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E.2d 6, 10 (Ill. App. Ct. 1st

Dist. 2011) (citation omitted), as described below, that burden is not a high hurdle here.

### A. The Putative Class Likely Consists of Thousands of Members and Therefore Readily Satisfies the Numerosity Requirement.

The first step in certifying a class is showing that "[t]he class is so numerous that joinder

4

of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when joining "such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chi. Med. Sch.*, 69 Ill. 2d 320, 337 (1977)). "Plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, nonspeculative estimate will suffice." *Unilock Chicago*, 892 N.E.2d at 97. Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004); *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.20, 66 (4th ed. 2001).

Here, Plaintiff alleges—and believes discovery will show—that Defendants have made unsolicited telephone calls to thousands of individuals throughout the country. (Compl. ¶¶ 1, 3, 15, 20, 27) An allegation that the proposed class consists of more than a thousand members provides "ample basis" to support the conclusion that the class is so numerous that joinder of all members is impracticable. *Carrao v. Health Care Serv. Corp.*, 118 Ill. App. 3d 417, 427 (1st Dist. 1983); *see also Tassan v. United Dev. Co.*, 88 Ill. App. 3d 581, 594 (1st Dist. 1980) (finding more than 150 potential claimants would satisfy numerosity); *Kulins v. Malco, A Microdot Co., Inc.*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (finding even 35 class members could satisfy numerosity). Further, joinder of the Class's claims would be impracticable because their claims are small relative to the resources necessary to prosecute this litigation. As such, absent a class action few individuals could afford to bring an individual lawsuit over the amounts at issue. *See Gordon*, 224 Ill. App. 3d at 204.

5

Accordingly, the proposed Class satisfies the numerosity requirement.[2]

**B.    The Proposed Class Shares Common Questions of Law and Fact that Predominate Over Any Individual Issues.**

Section 2-801's second prerequisite requires that there are "questions of fact or law common to the class" and that those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Common questions of law or fact are typically found to exist when the members of a proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.*, 87 Ill. 2d 7, 17 (1981); *Steinberg*, 69 Ill. 2d at 341; *McCarthy v. LaSalle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634 (Ill. Ct. App. 1992). After common questions of law or fact have been identified, these common questions must also predominate over any issues affecting only individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (Ill. Ct. App. 1984). Ultimately, commonality is a relatively low and easily surmountable hurdle. *See Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

The claims of Plaintiff and the Class in this case are based upon the same common contention: that Defendants violated the proscriptions of the TCPA by making unsolicited telephone calls *en masse* to their cellular telephones, despite the fact that they did not authorize Defendants to do so. (Compl. ¶¶ 1, 3, 15, 20, 27) Defendants made the telephone calls systematically and its conduct affected Plaintiff and the Class members in a virtually identical

---

[2]    To the extent the Court requires additional details regarding the number of members in the Class, such information may be obtained from Defendants' records through discovery.

manner (*e.g.*, subjecting them to the aggravation and usage fees associated with the receipt of such telephone calls) (*Id.* ¶¶ 4, 30.) Moreover, Defendants' unlawful conduct will be proven through the use of common and generalized evidence applicable to each of the Class as a whole.

Defendants' conduct gives rise to the factual question common to all Class members: whether Defendants systematically made telephone calls to members of the Class who Defendants did not have a current record of consent to make such telephone calls. (*Id.* ¶ 30.)

This common factual question also leads to several legal questions common to the Class, including: (1) whether Defendants' conduct violates the TCPA; and (2) whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct. (*Id.*)

Accordingly, Section 2-801's commonality and predominance requirements are met.

## C. Plaintiff and His Counsel are Adequate Representatives and Have No Conflicts with the Class.

The third prerequisite of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). This means a plaintiff must be able to maintain an individual cause of action against the defendants and cannot be seeking relief that is potentially antagonistic to the other class members. *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988); *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 810 (3d Dist. 2007). In addition, plaintiff's counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Steinberg*, 69 Ill. 2d at 339 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). *rev'd on other grounds*, 417 U.S. 156 (1974)). This ensures "that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Gordon*, 224 Ill. App. 3d at 203 (citations omitted).

In this case, Cody has the same interests as members of the proposed Class—he received

7

an unauthorized telephone call from Defendants on his cellular phone as a result of Defendants' uniform course of unlawful conduct. (Compl. ¶¶ 23–27.) Therefore, like the other members of the Class, his interests lie in ensuring that Defendants' unlawful conduct does not continue in the future and that he and the other members of the Class recover the statutory damages and injunctive relief to which they are entitled. (*Id.* ¶¶ 5, 31, 34–40.) Plaintiff has no interests antagonistic to those of the other members of the Class. (*Id.* ¶ 29.)

Additionally, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving issues of similar or greater size, scope, and complexity as the instant action. (*See* Declaration of Christopher L. Dore ["Dore Decl."] at ¶¶ 3–5, a true and accurate copy of which is attached as Exhibit 1; *see also* Firm Resume of Edelson PC, a true and accurate copy of which is attached to Dore Decl. as Exhibit 1–A); *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding persuasive that proposed class counsel had been found adequate in past cases). To date, proposed class counsel have also diligently investigated and dedicated substantial resources to the claims in this action, and they will continue to do so throughout its pendency. (Dore Decl. at ¶ 6.) And, with respect to specific experience handling class actions of this sort, class counsel have in the past and are currently prosecuting numerous class actions involving certain social networking company's alleged violations of the TCPA. (*Id.*); *see, e.g., Sterk v. Path, Inc.*, No. 1:13-cv-02330 (N.D. Ill.); *Coffman v. Glide Talk, Ltd.*, No. 1:13-cv-05190 (N.D. Ill.).

Accordingly, both Plaintiff and his counsel satisfy (and exceed) the adequacy requirement.

D.    **This Class Action is the Most Appropriate Method to Adjudicate the Claims at Issue.**

The final prerequisite for class certification is met where "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite in a particular case, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203 (citation omitted). In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.* at 204; *Purcell and Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("the predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Additionally, a "controlling factor in many cases is that the class action is the only practical means for class members to receive redress...." *Gordon*, 224 Ill. App. 3d at 203; *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1004 (Ill. App. Ct. 1991) ("In a large and impersonal society, class actions are often the last barricade of consumer protection.").

Under the circumstances of this case, a class action is the most appropriate method to fairly and efficiently adjudicate the claims at issue. The injuries suffered by individual members of the Class are relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendants' conduct. (Compl. ¶ 32.) Absent a class action, members of the Class would likely not obtain relief from Defendants, and Defendants would continue to make unsolicited telephone calls to consumers nationwide. (*Id.*) Thus, a class action is appropriate because it would be difficult, if not impossible, for the individual Class members to obtain effective relief. Likewise, the fact that Section 2-801's numerosity, commonality and predominance, and adequacy requirements have been satisfied, further demonstrates the

9

appropriateness of proceeding with this case as a class action.

Accordingly, Section 2-801's final prerequisite is satisfied and the proposed Class warrants certification.

## IV. CONCLUSION.

For the foregoing reasons, Plaintiff William Cody, individually and on behalf of the proposed Class, respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a supplemental memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and, (5) provide all other and further relief that the Court deems reasonable and just.

Respectfully submitted,

WILLIAM CODY, individually and on behalf of all others similarly situated,

Dated: June 6, 2014           By: _____
                                   One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Christopher L. Dore
cdore@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm I.D.: 44146

10

# EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

WILLIAM CODY, individually and on behalf
of all others similarly situated,

*Plaintiff,*

v.

THE NIELSEN COMPANY (US), LLC a
Delaware limited liability company,
NIELSEN AUDIO, INC., a Delaware
corporation, and SCARBOROUGH
RESEARCH, a Delaware general partnership,

*Defendants.*

Case No.

## DECLARATION OF CHRISTOPHER L. DORE IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

I, Christopher L. Dore, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, hereby declare and state as follows:

1.      I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2.      I am an attorney at the law firm of Edelson PC, which has been retained to represent the named Plaintiff in this matter, William Cody.

3.      Attached hereto as Exhibit 1-A is a true and accurate copy of the firm resume of Edelson PC.

4.      As shown in Exhibit 1-A, Edelson PC has significant experience prosecuting consumer class actions and complex litigation of a similar nature, scope, and complexity to the instant case.

5.      Edelson PC and its attorneys have been appointed Class Counsel in numerous actions throughout the country.

1

6.     To date, Edelson PC and its attorneys have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this matter, and will continue to do so throughout its pendency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this June 6th, 2014 at Chicago, Illinois.

Christopher L. Dore

# EXHIBIT 1–A

## EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including privacy class actions involving comScore, Netflix, Time, Microsoft, and Facebook, numerous Telephone Consumer Protection Act ("TCPA") against companies such as Google, Twentieth Century Fox, and Simon & Schuester, class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit, fraudulent marketing cases against software companies such as Symantec, mobile content class actions against all major cellular telephone carriers, the Thomas the Tank Engine lead paint class actions, and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

### PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm'". (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009)

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." - *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal) (order appointing the firm interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing the sole lead counsel due, in part, to its "significant and particularly

specialized expertise in electronic privacy litigation and class actions[.]")

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

*Privacy/Data Loss*

### Data Loss/Unauthorized Disclosure of Data

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore. Inc.,* No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing internet analytics company of improper data collection practices.

- *Resnick v. Avmed,* No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred.

- *In re Netflix Privacy Litigation,* No. 5:11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar cy pres settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.* 12-CV-12831 (E.D. Mich.), *Grenke v. Hearst Communications, Inc.,* 12-CV-14221 (E.D. Mich.), *Fox v. Time, Inc.,* 12-CV-14390 (E.D. Mich.) Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm,* No. 5:09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged

unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, 08 CH 00448 (Cook County, IL): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

### Telephone Consumer Protection Act

Edelson has been at the forefront to TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., UnitedHealth Group, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 1:10-cv-05260 (N.D. Ill): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, cv 11-5935 PSG (C.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile, et al*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D.Cal.).

Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.) Lead counsel in preliminary approved $6 million settlement.

- *Woodman et al v. ADP Dealer Services, et al.*, 2013 CH 10169 (Cook County, IL) Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.). Co-lead counsel in in $10 million text spam settlement.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

**Consumer Technology**

**Fraudulent Software**

In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cook County, IL): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp., et al.*, No. 3:12-cv-00154-CRB (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde, et al. v. Support.com, Inc., et al.* (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC* (E.D. Pa.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb, et al. v. Cleverbridge, Inc.*, et al. (N.D. Ill.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

Edelson PC has litigated cases video game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, 13-cv-01962-MEJ (N.D. Cal.) Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

### *Mortgage & Banking*

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "Prompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC. Lead counsel in class actions challenging Citibanks's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

*General Consumer Protection Class Actions*

We have successfully prosecuted countless class action suits against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Illinois): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams, et al. v. Motricity, Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

## Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 1:10-cv-02964 (N.D. Ill): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 3:11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

### Products Liability Class Actions

We have been appointed lead counsel in state and federal products liability class settlements, including a $30, million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

### Insurance Class Actions

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually

settled the case ensuring that each class member would remain insured.

*Mass/Class Tort Cases*

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in

addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON PC, and the Chair of the Telecommunications Practice Group. Mr. Andrews has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc.*, No. C 06 2893 CW (N.D. Cal.), *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.), *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.), *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Ill.), *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Ill.), and *Kramer v. Autobytel, Inc.*, No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Mr. Andrews has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging

technology. Representative reported decisions include: Lozano v. Twentieth Century Fox, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), and *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010), *In re Jiffy Lube Int'l Text Spam Litig*, --- F. Supp. 2d ---, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Mr. Andrews has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Mr. Andrews was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

A native of the Detroit area, Mr. Andrews graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Mr. Andrews is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.,* et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy, (*Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Kramer v. Autobytel, Inc.* (10-cv-02722-CW); *Turner v. Storm8, LLC*, (09-cv-05234) (N.D. Cal.); Standiford v Palm, Inc. (09-cv-05719-LHK) (N.D. Cal.); and *Espinal v Burger King Corporation*, (09-20982) (S.D. Fla.)). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.* 785 F.Supp.2d 855 (N.D. Cal.), *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal.), and *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D.Ill.). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC'S Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including Webb v. Cleverbridge, et al., 11-cv-4141 (N.D. Ill.), Missaghi v. Blockbuster, 11-cv-2559 (D. Minn.), Ledet v. Ascentive, 11-cv-294 (E.D. Penn.), and Drymon v. CyberDefender, 11 CH 16779 (Cook Cnty, Illinois), and was appointed sole-lead class counsel in Loewy v. Live Nation, 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Mr. Woodrow focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful

home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Mr. Woodrow delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Mr. Woodrow as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership, Williams et. al. v. Motricity, Inc.*, and *Walker et. al. v. OpenMarket Inc.*

Mr. Woodrow has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Mr. Woodrow received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Woodrow is admitted to practice in Colorado (2011) and Illinois (2005).

Mr. Woodrow received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., magna cum laude, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**MARK EISEN** is an Associate at Edelson PC, where he focuses on consumer class actions. Prior to joining the firm, Mark clerked for the Honorable Gary Allen Feess, United States District Court for the Central District of California.

Mark received his J.D., magna cum laude, from the Boston University School of Law. While in law school, he won the Homer Albers Prize Moot Court Competition, represented BU on the National Moot Court team, and was a note development editor on the BU International Law Journal. Mark's academic note, Who's Running This Place? A Comparative Look at the Political Appointment System in the United States and Britain, and What the United States Can Learn, was published in the International Law Journal in the spring of 2012. Most importantly, Mark was active with the Boston University School of Law Softball Team.

Prior to law school, Mark attended the University of Southern California where he earned a B.A., magna cum laude, in Political Science and Economics. While there, Mark was a teaching assistant to Professor Dan Schnur. Mark also traveled the country as part of the advance team for John McCain's 2008 presidential campaign.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited Cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in

Washington D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated magna cum laude from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., cum laude, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable Judge Bauer in the Seventh Circuit Court of Appeals and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at Edelson PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including Elder v. Pacific Bell Telephone Co., et al., 205 Cal. App. 4th 841 (2012), where the California Court of Appeals held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Ins. Co., et al.*, --- F.R.D. ---, 2013 WL 542854 (N.D. Cal. Feb. 12, 2013), a case where the Defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated magna cum laude from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Court of Appeals, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a

non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude. with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

**JACK YAMIN** is an Associate at EDELSON PC, where he focuses on privacy and consumer class actions.

Jack graduated cum laude from Northwestern University's Accelerated (2-year) JD Program. While in law school, Jack was a member of the Center for Wrongful Convictions, where he worked on post-conviction cases in Illinois appellate courts. Jack also served as a judicial extern to the Honorable Marvin Aspen, a senior judge of the United States District Court for the Northern District of Illinois. Throughout law school, Jack was a member of the Center for Conflict Resolution, where he mediated cases in Illinois courts throughout Chicago.

Prior to joining the firm, Jack worked as a tax consultant for business owners throughout the country, representing clients before the Internal Revenue Service, negotiating installment agreements, and handling tax audits. Jack also spent some time working at a literary agency, helping writers publish novels and marketing their work. Jack graduated summa cum laude from Binghamton University, earning his B.A. in philosophy and English literature. He is a member of the Phi Beta Kappa honor society.